[No. 4102.]

## DAVIS v. BOWER.

MORTGAGES — DELIVERY — CONDITION PRECEDENT — FORE-
CLOSURE.

Plaintiff and defendant were the joint owners of two mining claims.
Defendant agreed to advance plaintiff's half of the money necessary to
secure patent if plaintiff would secure him by deed of trust to his inter-
est in the claims. Plaintiff executed his note to defendant for the
estimated amount secured by the deed of trust and left them with an
attorney to be delivered to defendant upon the execution and delivery
by defendant to plaintiff of a declaration of use showing for what pur-
pose the money was to be expended. In violation of his instructions
the attorney delivered the note and deed of trust to defendant without
the execution of the declaration and before all the work in procuring
the patent had been done or paid for the deed of trust was foreclosed
and defendant bid in the property. Held that the foreclosure was un-
authorized and the sale was properly set aside for two reasons: first,
because the condition precedent, not having been complied with there
was no legal delivery of the note and deed of trust; and second, because
defendant had not performed his part of the contract so as to entitle
him to a foreclosure. And the defendant not having been induced to act
as he did through anything said or done or omitted by plaintiff nor his
condition changed for the worse by any reliance upon plaintiff's con-
duct, plaintiff was not estopped to deny the validity of the delivery of
the note and trust deed.

*Appeal from the District Court of El Paso County.*

Mr. CHARLES J. HUGHES, Jr., for appellant.

Mr. A. T. GUNNELL, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the
court.

This is an action to cancel a trustee's deed. In
June 1895 the plaintiff (appellee) Bower and the de-
fendant (appellant) Davis were the owners each of
an undivided one-half interest in two mining claims
in the Cripple Creek mining district. They desired

to obtain a patent for them, to secure which,. it was
estimated, would cost about $400. Bower was un-
able to furnish the money for his share of the ex-
penses, and an agreement was entered into between
the parties whereby Davis was to advance it and
Bower was to secure him against loss by a trust deed
upon his interest in the claims.

The parties do not agree as to all the terms of the
contract, or as to the time when it was made.   The
defendant says that the time was about the first of
June, 1895, and that in consideration of his advanc-
ing the sum of $200 for Bower to cover these costs,
the latter agreed to secure him therefor by giving his
promissory note in the sum of $200, payable in six
months, secured by a trust deed upon his interest in
the premises.   The plaintiff says, although there was
a preliminary conversation between them about the
time mentioned, yet it was not until the 12th day of
June, 1895, that the terms of the contract were
definitely agreed upon and the conditions thereof re-
duced to writing, and that the possession of the note
and trust deed which he executed in pursuance of the
contract was fraudulently obtained by the defendant
and the foreclosure of the trust deed and the pur-
chase of the premises by him were in fraud of plain-
tiff's rights.

The trial was by the court and resulted in findings
of fact in favor of the plaintiff, and a decree was ren-
dered setting aside the trustee's deed and declaring
plaintiff to be the owner of an undivided half interest
in the property upon the payment by him into court
for the use and benefit of defendant of the sum of
$200 with legal interest thereon from the date of the
note to the date of the decree.

We have not depended upon the abstract, but have
read with care the entire evidence as contained in the

transcript. This investigation makes it clear that the findings in plaintiff's favor by the trial court are abundantly justified.

It appears that shortly before the date of the note and trust deed the parties met at Cripple Creek, and after ascertaining that the probable expenses incident to securing a patent would be about four hundred dollars, the plaintiff proposed to the defendant that, if he would advance his share, or $200, the plaintiff would secure him by a trust deed upon his interest in the two claims. At that time there was no acceptance of the proposition by defendant, although plaintiff testifies that it was his impression that defendant would agree to it. The parties themselves never met afterwards, but on the 12th day of June, 1895, the plaintiff went to the law office of Jones & Rhett in Cripple Creek, and James Murray, who was the agent and representative of the defendant in the making of this contract, either accompanied plaintiff or there met him. Mr. Jones directed Mr. Moody, an attorney in the office, to prepare a note and trust deed without any suggestion or direction from the plaintiff, and after the same were executed by the plaintiff a receipt or writing was drawn up by Jones and given to Bower evidencing the purpose for which these instruments were executed, and it reads:

"Cripple Creek, Colo., June 12, 1895.

"Received from C. A. Bower, note and deed of trust for $200, payable to W. L. Davis, and to be de livered to said Davis whenever said Davis signs and delivers to said Bower a declaration as to the use and purpose to be made of the $200 aforesaid, viz., that it shall be expended in paying half of the patent expenses on the Ethel Louise."

In effect the plaintiff testifies that these instruments were not to be delivered to Davis until the latter signed and delivered to him a declaration as to the use and purpose to be made of the $200 which Davis was to advance for him; and a further condition was that these were not to be obligations against him until $200 were expended in paying for one-half of the patent expenses.

Upon the other hand, the testimony of defendant is that the note and trust deed were executed and delivered to him and became at once binding obligations upon Bower provided only Davis properly expended the money. Both admit that the note and trust deed were intended only as a security. Without notifying Bower, and contrary to the terms of the foregoing writing, Jones delivered the note and mortgage to Davis about September 20, 1895, because he had forgotten the existence of the receipt and supposed the $200 had been properly disbursed by Davis, and it seems they were afterwards returned to Jones, for, on the 16th of April, 1896, he sent them to the public trustee with directions to proceed and advertise the property for sale because of the failure of the maker to pay the note. The property was advertised for sale on the 15th of May, 1896, and sold and bid in by defendant on June 15 following, and that title is still in him.

The plaintiff did not know of the sale until some time in July, 1897. Before the instruments were sent to the public trustee they were put in bank for collection, and Bower was notified by the bank and also by defendant to make payment, which he did not do.

It would seem from the mere statement of the case that plaintiff was entitled to recover. The court below found upon conflicting evidence that the contract

between the parties was as alleged by plaintiff, and that the note and trust deed were delivered in violation of the agreement, and their possession and the subsequent foreclosure and sale under the trust deed were in fraud of plaintiff's rights. We think this finding is correct and should be sustained for several reasons.

If the parties ever made an agreement, it was not until the day the note and trust deed were executed. The proposition made by plaintiff to defendant theretofore was not at the time it was made accepted by the latter, and unless through his agent Murray at the time of the execution of the writings he agreed to the terms of the contract as indicated in the receipt, the minds of the parties never met.

It is contended by defendant that Murray was not his agent in this transaction, but the original transcript, though not the abstract, shows clearly that whatever Murray did at the time these papers were executed he did as the agent of defendant and under authority from the latter; and it is likewise clear that the note, the trust deed and the receipt were drawn either at the suggestion of Murray, or with his approval. So we are satisfied that the conditions of the contract are correctly expressed in the writing of June 12, and that the note and trust deed were, and are, not enforceable against the plaintiff unless there was a compliance by the defendant with its terms.

There was no declaration of use by the plaintiff prior to the delivery by Jones to the defendant of the note and trust deed. This delivery was expressely inhibited. It is true defendant says that after their receipt by him, because of a suggestion from Murray, his agent, that Bower wanted some sort of a letter, he wrote one, whether to Bower or to Jones he is not

sure, declaring the use; but is not certain that he mailed it. Even if a subsequent declaration constitutes a substantial compliance with the agreement, it is not shown that it was ever mailed or received.

But if we should assume with the defendant that the note and the trust deed are enforceable (though the condition precedent as to delivery was ignored) whenever defendant advanced for the plaintiff the sum of $200 towards securing a patent, it is clear that at the time of the foreclosure and sale defendant had not fulfilled his contract. Apparently it was supposed by the parties that a patent could be obtained within six months from the time of the execution of the note, and so it was made payable within that period of time. But soon after the application for patent was filed adverse suits were brought which delayed action by the land department, and patent was not issued at the time of the beginning of this action. Some of the work to that end was not done, and payment for the same was not made, until shortly before this suit was begun. One of the surveyors who made the patent survey testified that the last payment of $75 by Davis was not made until the 15th day of May, 1897, nearly one year after the property was sold at the trustee's sale, and the record further fails to show the exact time when all the other advances were made. So that at the time of that sale defendant had not complied with his contract, the collateral to secure defendant for his advances could not be realized on, and the attempted foreclosure and sale were in direct violation of the agreement which defendant himself sets up.

It necessarily follows, therefore, whether the contract be as alleged by plaintiff or as stated by defendant, that defendant failed to perform his part of

it so as to entitle him to a foreclosure and sale of the trust deed at the time it was made.

But counsel with some degree of plausibility urges some arguments which he says should reverse this judgment, and these we briefly consider. First he says that Murray had no authority to change the terms of the contract which had been previously made between plaintiff and defendant themselves. This, it will be observed, assumes, what plaintiff denies, that a contract was made previous to June 12 1895. Whether it was or not is not material so far as this point is concerned, for the record, as we have already said, shows that Murray was the agent of defendant in this transaction and had power to bind him by a modification of its previous terms.

Jones, it seems, was not defendant's agent, but merely acted as his attorney to draw the necessary writings. The conditional delivery of the note and trust deed to him was a good delivery, and when Jones gave them to defendant contrary to the terms of the writing, plaintiff was not bound by that act.

If a condition precedent may not operate to defeat a recovery where there has been a substantial compliance with it and a receipt of benefits by the obligor, that principle has no application here, since there was a very material failure by the defendant to perform his contract, even according to his own interpretation of it, at the time of the foreclosure of the trust deed.

Neither is the plaintiff estopped now to assert that the delivery of the note and trust deed was invalid. Several of the essential elements of estoppel are absent. There is no claim by defendant that he was induced to act as he did through anything said or done or omitted by plaintiff, or that his condition

has been changed for the worse by any supposed reliance upon the latter's conduct. The fact that plaintiff did not pay the note when notified by the bank, or repay defendant's advances when the latter so requested, does not now estop him to deny that the same was a valid obligation against him. At the time he did not know that these instruments had been delivered without the declaration of use from the plaintiff, or at all. He himself testifies that he did not consider himself legally liable, but was morally liable to pay the defendant whatever sum the latter had advanced for him in securing a patent, irrespective of the note, and he now offers to refund the same, as he has always been willing to do.

The defendant has never rendered a statement to the plaintiff of the expenditure of the $200 when, or for what purpose, it was disbursed, as in good faith he should have done.

The argument that plaintiff is estopped by laches and by adverse possession can hardly be intended as serious. Plaintiff did not, as a matter of fact, know that a sale had been made under the trust deed until about four months before he brought his action. He had kept up his annual assessment work upon the claims down to, and including, the year 1897, and defendant was in adverse possession to the plaintiff's knowledge only for about four months before he brought his suit.

The parties owned this property in common, and, in the circumstances of the case, not only was defendant obliged to comply with the express contract they made, but plaintiff was justified in relying upon his co-tenant's good faith, and had the right to believe that no undue advantage would be taken of him. While the burden of proof is upon the plaintiff

to establish the allegations of his complaint, he did so to the satisfaction of the court below who heard the testimony of the witnesses, and we are not disposed to interfere with its findings.

A careful reading of the testimony does not impress us with the belief, as it seems to have convinced counsel for defendant, that this is a case where a party has stood by and seen expenditures made upon a mine which resulted in developing it into a paying property and then trumping up a claim of ownership therein for the purpose of extorting a compromise or blackmailing defendant into a settlement. On the contrary, the record impresses us with the conviction that plaintiff's cause of action is just, that defendant has wronged him, and that the proper relief has been awarded.

The judgment of the lower court should therefore be affirmed, and it is so ordered.

*Affirmed.*